UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

KARISA SHYANNE DANIELS,

    Petitioner,

v.                                               CIVIL ACTION NO. 2:19cv523

HAROLD W. CLARKE, Director,
Virginia Department of Corrections

    Respondent.

## REPORT AND RECOMMENDATION

This matter is before the Court on Petitioner Karisa Shyanne Daniels' ("Petitioner") *pro se* Petition for a Writ of Habeas Corpus ("the Petition") filed pursuant to 28 U.S.C. § 2254, ECF No. 1, and Respondent Harold W. Clarke's ("Respondent") Motion to Dismiss, ECF No. 9. The matter was referred for a recommended disposition to the undersigned United States Magistrate Judge ("undersigned") pursuant to 28 U.S.C. §§ 636(b)(1)(B) and (C), Federal Rule of Civil Procedure 72(b), Eastern District of Virginia Local Civil Rule 72, and the April 2, 2002, Standing Order on Assignment of Certain Matters to United States Magistrate Judges. The undersigned makes this recommendation without a hearing pursuant to Federal Rule of Civil Procedure 78(b) and Eastern District of Virginia Local Civil Rule 7(J). For the following reasons, the undersigned **RECOMMENDS** that the Respondent's Motion to Dismiss, ECF No. 9, be **GRANTED,** and the Petition, ECF No. 1, be **DENIED** and **DISMISSED WITH PREJUDICE.**

### I. FACTUAL AND PROCEDURAL BACKGROUND

On February 27, 2018, in the Circuit Court of Henrico County, Petitioner pleaded guilty to attempted capital murder of a law enforcement officer, felony eluding police, armed burglary,

possession of a firearm by a felon, first-offense use of a firearm in the commission of a felony, and second-offense use of a firearm in the commission of a felony. ECF No. 1 at 1. The Defendant allowed the Commonwealth to summarize the facts, S.R. at 137, and it did so as follows:

> On September 19th, 2017 at approximately 11:30 p.m., Virginia State Trooper Putnam was on patrol in the area of Route 150 when he observed a car pass his marked patrol vehicle from behind at a high rate of speed. He activated his emergency lights and attempted to execute a traffic stop. The car briefly pulled over and he was able to notice that it was a Toyota with North Carolina license plates PAX-6648. Before he could make contact with the driver, she sped off. He returned to his vehicle and initiated the pursuit with lights and sirens. The pursuit reached speeds of 110 miles an hour. Several times the driver braked heavily, causing the tires to skid and smoke before she then accelerated rapidly. At one point, the two cars were side by side in an area illuminated by streetlights and Trooper Putnam was able to see the Defendant look directly at him.
>
> She ultimately turned into a residential area where the pursuit continued in Henrico County. She came to the end of the road and skidded through a cul-de-sac, backed up, struck the Trooper's vehicle as she sped around to escape again. She exited onto Parham Road and turned onto September Drive, again, through a residential neighborhood and ended up in another cul-de-sac on Lakeway Court, again, in Henrico County.
>
> When she reached the end of the cul-de-sac and tried to turn around to get past the Trooper, he was able to position his patrol car so they were nose to nose. He slowed almost to a stop as the Defendant struck his patrol car. He could hear the screeching of her tires as she pressed on the accelerator. Eventually, he was able to contain the car and got it stuck in a ditch.
>
> Once her car was disabled, Trooper Putnam saw the Defendant move toward the passenger side appearing to grab something before she fled the vehicle. She ran towards the rear of her car and up a paved driveway. As Trooper Putnam pursued, he repeated the command to get on the ground. The Defendant slowed and kicked off her shoes. He saw the Defendant's shoulders move forward while he heard the distinct sound of a slide of a firearm being pulled and released on its frame, known as racking a round.
>
> The Defendant turned to her right, raising a handgun and fired a shot. At the time she fired a shot, the Defendant was about ten feet away from Trooper Putnam. The bullet struck his right arm and chest, traveled through his right arm, shattering the bones of his arm and causing that arm to fall limp. He felt as if the bullet had penetrated his chest but luckily his bulletproof vest was able to stop the bullet.
>
> The gunshot knocked him to the ground, causing him to lose his flashlight and portable radio. He was able to get back to his patrol car, but he could not reach

> dispatch and could hear sirens approaching, so he made his way to the end of the cul-de-sac to alert responding officers, so they would not be ambushed by the Defendant.
>
> As Trooper Putnam made contact with the responding officers, the Defendant fled to a home at 413 September Drive. John Fraiser and his wife Isabel noticed police activity in the area and heard a knock at the front door. Thinking it was the police, they opened the door. At this time, they encountered the Defendant.
>
> She said she needed help. Mr. Fraiser asked her what was going on. She pushed the door open and entered the home exhibiting a firearm. She pointed that handgun at Mr. Fraiser demanding his car keys. He said he did not have his keys on him and he thought they were in the family room. His wife fled out the front door while the Defendant led Mr. Fraiser at gunpoint to the family room. While pointing the gun at him, she ordered him to find the keys and walk to the car with her. He tried to stall for time knowing his wife had gone for help.
>
> Suddenly, she fled out the back door. The police arrived shortly thereafter and Mr. Fraiser pointed them in the direction she fled. Officers were able to locate her hiding in a neighboring backyard. They recovered her firearm, which was hidden in the immediate area where she was discovered.

ECF No. 10 at 2-4 (quoting S.R. 264–66).

On May 8, 2018, the trial court accepted Petitioner's guilty plea and sentenced her to eighty-eight years of imprisonment with forty-two years suspended. ECF No. 1 at 1. In exchange for Petitioner's guilty plea, the Commonwealth moved to nolle prosequi indictments for aggravated malicious wounding, malicious injury of a law enforcement officer, reckless driving, driving with a suspended license, attempted robbery, abduction, and four additional counts of use of a firearm in the commission of a felony, second or subsequent offence. S.R. at 281. Petitioner did not appeal. ECF No. 1 at 2.

The Clerk of the Supreme Court of Virginia received a Petition for a Writ of Habeas Corpus from Petitioner on April 30, 2019. S.R. at 1. Among other things, Petitioner claimed:

> [Petitioner's] attorney Russel Stone Jr., did not provide, nor did [Petitioner] receive the level of effective assistance of counsel required by the Constitution. Both, the "performance" prong and the "prejudice" prong tests of *Strickland* were violated in this case. Petitioner further states that if not for the advice she received from

3

counsel, that she would have insisted on going to trial. Hill v. Lockhart, 474 U.S. 52, at 59, 106 S. Ct. 366 (1985).

S.R. at 8.[1] In particular, Petitioner argued her counsel failed to adequately alert her to the "[r]easonable [d]efenses" of legal impossibility and insanity, and therefore Petitioner did not make "a knowing and intelligent decision whether or not to plead guilty to the charged offenses." S.R. at 9–10.

The Supreme Court of Virginia denied the Petition on March 5, 2020. S.R. at 281. Regarding legal impossibility, it held that Petitioner's claim satisfies neither the "performance" nor the "prejudice" prong of the two-part test enunciated in *Strickland v. Washington*, 466 U.S. 668, 687 (1984).

> "While a person who has become so intoxicated as to be unable to deliberate and premeditate cannot commit any class of murder that is defined as willful, deliberate, and premeditated killing, mere intoxication from drugs or alcohol will not suffice to negate premeditation." *Jenkins v. Commonwealth*, 244 Va. 445, 458 (1992) (citing *Giarratano v. Commonwealth*, 220 Va. 1064, 1073 (1980)). Instead, the defendant must show his "level of intoxication was [] so great as to render him incapable of committing a deliberate and premeditated killing." *Giarratano*, 220 Va. at 1073.
>
> . . . .
>
> Petitioner fails to identify any evidence available to counsel from which he could reasonably have argued petitioner was incapable of deliberation and premeditation under these circumstances. Thus, petitioner has failed to demonstrate that counsel's performance was deficient or that there is a reasonable probability that, but for counsel's alleged errors, she would have pleaded not guilty and proceeded to trial. *Hill v. Lockhart*, 474 U.S. 52, 59 (1985).

S.R. 282. Turning to Petitioner's claim regarding the possibility of an insanity defense, the court held:

---

[1] Although not raised in the instant § 2254 Petition, the state Petition also alleged ineffective assistance of counsel due to: (1) counsel's failure to adequately negotiate a plea agreement, (2) counsel's failure to adequately advise Petitioner as to lesser included offenses, (3) counsel's failure to properly advise Petitioner with regard to sentencing, and, (4) counsel's failure to adequately advise Petitioner as to other options available to her. *See* S.R. at 283–84. The Supreme Court of Virginia rejected each of these claims. *Id.*

4

> [T]his claim satisfies neither the "performance" nor the "prejudice" prong of the two-part test enunciated in *Strickland*. . . . This Court has "permitted the use of the insanity defense when prolonged, habitual, and chronic alcohol or drug abuse has created a mental disease or defect." *White v. Commonwealth*, 272 Va. 619, 626 (2006). However, mere intoxication is insufficient and the defendant must show "a mental disease or defect caused by chronic abuse of alcohol or drugs" to support such an insanity defense. *Id.* at 627. Petitioner does not allege she suffers from a "mental disease or defect caused by chronic abuse of alcohol or drugs," *id.*, nor does she identify any basis on which counsel might have suspected or argued such disease or defect existed and that it prevented petitioner from understanding the nature and quality of her actions, or from knowing what she was doing was wrong. *Id.* at 625. Thus, petitioner has failed to demonstrate that counsel's performance was deficient or that there is a reasonable probability that, but for counsel's alleged errors, she would have pleaded not guilty and proceeded to trial. *Hill*, 474 U.S. at 59.

S.R. at 283.

Petitioner filed the instant *pro se* § 2254 Petition for federal habeas relief on October 1, 2019.[2] ECF No. 1. The Petition contained a single ground:

> 1) Trial counsel failed to fully advise Petitioner of two (2) available defenses (legal impossibility and insanity). The defenses were either not mentioned by counsel or not discussed to any real degree, meaning that the information on the two (2) defenses were not provided sufficiently enough for the petitioner to make a knowing and intelligent decision whether or not to plead guilty to the charged offenses.

ECF No. 1 at 5.

On May 29, 2020, Respondent filed a Motion to Dismiss, a Rule 5 Answer, a Brief in Support of the Motion to Dismiss, and *Roseboro* Notice. ECF Nos. 8–11. Petitioner's time to file an opposition has since expired. Therefore, the instant Petition and Motion to Dismiss are ripe for recommended disposition.

---

[2] The same day, Petitioner filed a motion to stay her § 2254 Petition until her state petition had been resolved. ECF No. 2. This motion was dismissed as moot on May 4, 2020. ECF No. 4.

5

## II. DISCUSSION

A. <u>Exhaustion and Procedural Default</u>

Respondent concedes Petitioner's "claim is exhausted, having been presented to the Virginia Supreme Court in a habeas corpus petition.". ECF No. 10 at 2. Accordingly, and because there is nothing in the record to suggest procedural default, the undersigned **FINDS** that the Court has jurisdiction to consider the Petition.

B. <u>Federal Habeas Review of Ineffective Assistance of Counsel</u>

Habeas relief is warranted only if Petitioner can demonstrate that the adjudication of her claims by the state court "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States" or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). Thus, federal habeas relief is precluded, so long as "fair-minded jurists could disagree" on the correctness of the state court's decision. *Harrington v. Richter*, 562 U.S. 86, 102 (2011). "If this standard is difficult to meet, that is because it was meant to be. As amended by AEDPA[3], § 2254(d) stops short of imposing a complete bar on federal-court relitigation of claims already rejected in state proceedings." *Harrington v. Richter*, 562 U.S. 86, 102 (2011) ("It preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with this Court's precedents. It goes no further.") (citing *Felker v. Turpin*, 518 U.S. 651, 664 (1996) (discussing AEDPA's "modified *res judicata* rule" under § 2244)). In other words, "AEDPA prohibits federal habeas relief for any claim adjudicated on the merits in state

---

[3] Antiterrorism and Effective Death Penalty Act of 1996

6

court, unless one of the exceptions listed in § 2254(d) obtains." *Premo v. Moore*, 562 U.S. 115, 121 (2011).

In *Williams v. Taylor*, the Supreme Court explained that the "exceptions" encapsulated by § 2254(d)(1)'s "contrary to" and "unreasonable application" clauses have independent meaning. 529 U.S. 362, 404-05 (2000). A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in Supreme Court cases, or if it decides a case differently than the Supreme Court has done on a set of materially indistinguishable facts. *Id.* at 405–06. This Court may grant relief under the "unreasonable application" clause if the state court correctly identifies the governing legal principle from Supreme Court decisions, but unreasonably applies it to the facts of the particular case. *Williams v. Taylor*, 529 U.S. 362, 407-08 (2000). *See also Woodford v. Visciotti*, 537 U.S. 19, 27 (2002) ("The federal habeas scheme leaves primary responsibility with the state courts for these judgments and authorizes federal-court intervention only when a state-court decision is objectively unreasonable."). "The focus of the [unreasonable application] inquiry is on whether the state court's application of clearly established federal law is objectively unreasonable, and . . . an unreasonable application is different from an incorrect one." *Bell v. Cone*, 535 U.S. 685, 694 (2002).

In making this determination under Section 2254(d)(1), the Court "is limited to the record that was before the state court that adjudicated the claim on the merits." *Cullen v. Pinholster*, 563 U.S. 170, 181–82 (2011) ("Section 2254(d)(1) refers, in the past tense, to a state-court adjudication that 'resulted in' a decision that was contrary to, or 'involved' an unreasonable application of, established law. This backward-looking language requires an examination of the state-court decision at the time it was made. It follows that the record under review is limited to the record in

7

existence at that same time i.e., the record before the state court."). Thus, it is this Court's obligation to focus "on the state court decision that previously addressed the claims rather than the petitioner's freestanding claims themselves." *McLee v. Angelone*, 967 F. Supp. 152, 156 (E.D. Va. 1997). *See also Williams v. Taylor*, 529 U.S. 362, 412-13 (2000) (explaining that the Court independently reviews whether that decision satisfies either standard). Additionally, in undertaking such review, this Court is mindful that "a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

Because there is no allegation that the state courts decided Petitioner's state habeas endeavors "differently than the [U.S. Supreme] Court has on a set of materially indistinguishable facts," *Williams v. Taylor*, 529 U.S. 362, 413 (2000), the relevant exception is "permitting relitigation where the earlier state decision resulted from an 'unreasonable application of' clearly established federal law" and "[t]he applicable federal law consists of the rules for determining when a criminal defendant has received inadequate representation as defined in *Strickland*," *Premo v. Moore*, 562 U.S. 115, 121 (2011) (citing *Harrington v. Richter*, 562 U.S. 86, 100 (2011); 28 U.S.C. § 2254(d)(1)). *See also Strickland v. Washington*, 446 U.S. 668 (1984). In order to receive habeas relief in State court for ineffective assistance of counsel claims under the Sixth Amendment, Petitioner must show that trial counsel provided deficient assistance, and that she was prejudiced as a result of Trial Counsel's deficiency. *Strickland v. Washington*, 446 U.S. 668, 700 (1984) (conceptualizing the inquiry as two required prongs: a deficiency prong and a prejudice prong). First, to establish deficient performance, Petitioner is required to show that "counsel's representation fell below an objective standard of reasonableness." *Strickland*, 446 U.S. at 688-89 (holding that there is a strong presumption that trial counsel provided reasonable professional

assistance). Second, Petitioner is also required to demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 687, 693–94 (holding that counsel's errors must be "so serious as to deprive the defendant of a fair trial," and that a petitioner must "show that the errors had some conceivable effect on the outcome of the proceeding").

The United States Supreme Court summarized the high bar faced by petitioners in a federal habeas proceeding where a petitioner's Sixth Amendment ineffective assistance of counsel claims were previously rejected by the state court:

> Establishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult. The standards created by *Strickland* and § 2254(d) are both 'highly deferential,' . . . and when the two apply in tandem, review is 'doubly' so . . . . The *Strickland* standard is a general one, so the range of reasonable applications is substantial. . . . Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard.

*Premo v. Moore*, 562 U.S. 115, 122–23 (2011) (quoting *Harrington v. Richter*, 562 U.S. 86, 105 (2011) (citing *Strickland v. Washington*, 466 U.S. 668, 689 (1984); *Lindh v. Murphy*, 521 U.S. 320, 333 n.7 (1997); *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009))) (internal citations omitted). *See also Knowles*, 556 U.S. at 123 ("Under the doubly deferential judicial review that applies to a *Strickland* claim evaluated under the § 2254(d)(1) standard . . . Mirzayance's ineffective-assistance claim fails.") (citing *Yarborough v. Gentry*, 540 U.S. 1, 5–6 (2003) (*per curiam*)). Particularly relevant to Petitioner's claim, the "[f]ailure to raise a meritless argument can ***never*** amount to ineffective assistance." *Juniper v. Zook*, 117 F. Supp. 3d 780, 791 (E.D. Va. 2015) (quoting *Moore v. United States*, 934 F. Supp. 724, 731 (E.D. Va. 1996)) (emphasis added).

9

With these principles in mind, the undersigned now turns to the merits of the Petition.

In her sole claim, Petitioner contends that her trial counsel provided ineffective assistance because he "failed to fully advise Petitioner of two (2) available defenses (legal impossibility and insanity)". ECF No. 1 at 5. The undersigned will address each of these theories in turn.

*1. Legal Impossibility*

At the Virginia Supreme Court, Petitioner argued the charge of attempted capital murder was legally impossible due to a state of intoxication rendering her unable to form the required mental state. S.R. at 9. In rejecting this theory, the Supreme Court of Virginia concluded that the claim lacked merit because "Petitioner fails to identify any evidence available to counsel from which he could reasonably have argued petitioner was incapable of deliberation and premeditation." S.R. at 283. The undersigned agrees. Given the high degree of functioning needed to perform the acts described in the record and the strong presumption of effective assistance, the undersigned **FINDS** that the Supreme Court of Virginia's rejection of this portion of Petitioner's claim in the state habeas proceeding was neither unreasonable nor contrary to federal law.

*2. Insanity Defense*

Petitioner also argues that her attorney should have fully advised her as to the possibility of an insanity defense. ECF No. 1 at 5. At the Virginia Supreme Court, Petitioner argued this defense was reasonable because her acts were "so senseless," she must have been insane. Petitioner also asserted, with relation to her impossibility argument, that she had an addiction to heroin, and addiction is a mental illness. *See* S.R. at 10–11. Petitioner alleged she told her counsel that she wanted to pursue an insanity defense, and without further inquiry, her counsel told her "[n]o . . . it seems like you have good sense, and insanity is the hardest thing to prove." S.R. at

10

11. In Virginia, for substance abuse to give rise to an insanity defense, a defendant must prove "prolonged, habitual, and chronic alcohol or drug abuse has created a mental disease or defect." *White v. Commonwealth*, 272 Va. 619, 626 (2006). In turn, this "mental disease or defect [must be] such that [s]he did not know the nature and quality of the act [s]he was doing, or, if [s]he did know it, [s]he did not know what [s]he was doing was wrong." *Id.* at 625. The Virginia Supreme Court has refused to find an insanity defense for an individual experiencing psychosis due to "rather heavy abuse of cocaine, alcohol, and marijuana, as well as occasional use of crack cocaine." *See id.* at 627–28.

In rejecting Petitioner's claim, the Virginia Supreme Court held "Petitioner does not allege she suffers from a 'mental disease or defect cause by chronic abuse of alcohol or drugs,' nor does she identify any basis on which counsel might have suspected or argued such disease or defect existed and that it prevented petitioner from understanding the nature and quality of her actions, or from knowing what she was doing was wrong." S.R. at 283 (citing *White*, 619 Va. at 625, 627). Because of the presumption of adequate representation, and because Petitioner's trial counsel had no basis to believe Petitioner suffered from a "mental disease or defect" as the result of her substance abuse that made her unaware of either her actions or the wrongfulness thereof, the undersigned **FINDS** that the Supreme Court of Virginia's rejection of this portion of Petitioner's claim in the state habeas proceeding was neither unreasonable nor contrary to federal law.

The undersigned further notes Petitioner was aware of counsel's rejection of asserting an insanity defense before she pleaded guilty. There is no reason Petitioner should not be bound by her testimony, made in her plea colloquy, that she was satisfied with her representation. *See* S.R. at 283 (applying this rationale to a claim that counsel was deficient because he failed to negotiate

11

an adequate plea agreement). Accordingly, the undersigned **RECOMMENDS** that Petitioner's sole claim be **DISMISSED**.

## V. RECOMMENDATION

For these reasons, the undersigned **RECOMMENDS** the Respondent's Motion to Dismiss, ECF No. 9, be **GRANTED** and the Petition, ECF No. 1, be **DENIED** and **DISMISSED WITH PREJUDICE**.

## VI. REVIEW PROCEDURE

By receiving a copy of this Report and Recommendation, Petitioner is notified that:

1. Any party may serve on the other party and file with the Clerk of this Court specific written objections to the above findings and recommendations within fourteen days from the date this Report and Recommendation is forwarded to the objecting party, *see* 28 U.S.C. § 636(b)(1)(C) and Federal Rule of Civil Procedure 72(b), computed pursuant to Federal Rule of Civil Procedure Rule 6(a). A party may respond to another party's specific written objections within fourteen days after being served with a copy thereof. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).

2. A United States District Judge shall make a *de novo* determination of those portions of this Report and Recommendation or specified findings or recommendations to which objection is made. The parties are further notified that failure to file timely specific written objections to the above findings and recommendations will result in a waiver of the right to appeal from a judgment of this Court based on such findings and recommendations. *Thomas v. Arn*, 474 U.S. 140 (1985); *Carr v. Hutto*, 737 F.2d 433 (4th Cir. 1984), *cert. denied*, 474 U.S. 1019 (1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984), *cert. denied*, 467 U.S. 1208 (1984).

The Clerk is **DIRECTED** to forward a copy of this Report and Recommendation to Petitioner and to counsel for Respondent.

                                                    /s/
                                   Lawrence R. Leonard
                                 United States Magistrate Judge
                                    Lawrence R. Leonard
                                 United States Magistrate Judge

Norfolk, Virginia
December 7, 2020